UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

United States Courts
Southern District of Texas
F I L E D

SEP 18 2019

David J. Bradley, Clerk of Court

| UNITED STATES OF AMERICA | § | |
|---|---|---|
| | § | |
| v. | § | Criminal No. 19 CR 692 |
| | § | |
| CLARISSA MINERO, | § | |
| | § | |
| Defendant. | § | |

## INFORMATION

The United States Attorney for the Southern District of Texas charges:

### GENERAL ALLEGATIONS

At all times material to this Information, unless otherwise specified:

1. The Controlled Substances Act ("CSA") governed the manufacture, distribution, and dispensing of controlled substances in the United States. With limited exceptions for medical professionals, the CSA made it unlawful for any person to knowingly and intentionally manufacture, distribute, or dispense a controlled substance or conspire to do so.

2. The CSA and its implementing regulations set forth which drugs and other substances are defined by law as "controlled substances," and assigned those controlled substances to one of five schedules (Schedule I, II, III, IV, or V) depending on their potential for abuse, likelihood of physical or psychological dependency, accepted medical use, and accepted safety for use under medical supervision.

3. A controlled substance assigned to "Schedule II" meant that the drug had a high potential for abuse, the drug had a currently accepted medical use in treatment in the United States, or the drug had a currently accepted medical use with severe restrictions.

4. Pursuant to the CSA and its implementing regulations:

      a.    Oxycodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(xiii). Oxycodone, sometimes prescribed under brand names, including Roxicodone, was used to treat severe pain. Oxycodone, as with other opioids, was highly addictive.

      b.    At all times relevant, and as of October 6, 2014, Hydrocodone was classified as a Schedule II controlled substance. 21 C.F.R. § 1308.12(b)(1)(vi). Prior to October 6, 2014, hydrocodone was classified as a Schedule III controlled substance. Hydrocodone, sometimes prescribed under brand names including Norco, Lortab, and Vicodin, was used to treat severe pain. Hydrocodone, as with other opioids, was highly addictive.

5.    Medical practitioners, such as pharmacists, physicians, and nurse practitioners, who were authorized to prescribe, dispense, or distribute controlled substances by the jurisdiction in which they were licensed to practice, were authorized under the CSA to prescribe, or otherwise dispense or distribute, controlled substances, if they were registered with the Attorney General of the United States. 21 U.S.C. § 822(b). Upon application by a qualifying practitioner—including pharmacies, physicians, and nurse practitioners—the Drug Enforcement Administration ("DEA") assigned a unique registration number.

6.    Chapter 21 of the Code of Federal Regulations, Section 1306.04 governed the issuance of prescriptions and provided, among other things, that a prescription for a controlled substance "must be issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." Moreover, "[a]n order purporting to be a prescription issued not in the usual course of professional treatment . . . is not a prescription within the meaning and intent of [the CSA] and the person knowingly filling such a purported prescription, as well as the person issuing it, shall be subject to the penalties provided for violations of the provisions of law relating to controlled substances."

7. Chapter 21 of the Code of Federal Regulations, Section 1306.06 governed the filling of prescriptions and provided: "A prescription for a controlled substance may only be filled by a pharmacist, acting in the usual course of his professional practice and either registered individually or employed in a registered pharmacy, a registered central fill pharmacy, or registered institutional practitioner."

8. All prescriptions for controlled substances must be "dated as of, and signed on, the day when issued and shall bear the full name and address of the patient, the drug name, strength, dosage form, quantity prescribed, directions for use, and the name, address and registration number of the practitioner." 21 C.F.R. § 1306.05(a).

## ENTITY AND DEFENDANT

9. Golden USA Pharmacy, Inc., which did business as **Golden USA Pharmacy**, operated as an independent retail pharmacy located at 7400 Harwin Drive Suite 192, Houston, Texas 77036, as early as in or around March 2014. **Golden USA Pharmacy** was formed in or around 2011, in Lubbock, Texas, and moved to Houston, Texas, in or around March 2014. **Golden USA Pharmacy** became registered with the DEA, and has been licensed with the TSBP, since approximately February 2012. **Golden USA Pharmacy** was authorized to dispense Schedule II through V controlled substances.

10. Pharmacist 1 was the owner and Pharmacist in Charge ("PIC") of **Golden USA Pharmacy**. Pharmacist 1 dispensed thousands of prescriptions for controlled substances from **Golden USA Pharmacy**, based on fraudulent and illegitimate prescriptions.

11. Person 1 was a "crew leader" who coordinated with Pharmacist 1 at **Golden USA Pharmacy** to fill fraudulent and illegitimate prescriptions and divert controlled substances for profit.

12. Person 2 was Pharmacist 1's spouse who worked at **Golden USA Pharmacy**.

13. Defendant **CLARISS MINERO** was a pharmacy-technician trainee employed by Pharmacist 1 at **Golden USA Pharmacy**.

## COUNT 1
### Conspiracy to Commit a Crime Against the United States
### (18 U.S.C. § 371)

14. Paragraphs 1 through 13 of this Information are incorporated here.

15. From in or around October 2017 through in or around December 2018, the exact dates being unknown, in the Houston Division of the Southern District of Texas and elsewhere, Defendant

**CLARISSA MINERO**

knowingly and intentionally conspired with others, known and unknown, to commit an offense against the United States, that is, to knowingly and intentionally distribute and dispense, and to knowingly and intentionally possess with intent to distribute, mixtures and substances containing a detectable amount of controlled substances, including oxycodone and hydrocodone, both Schedule II controlled substances, and other controlled substances, outside the usual course of professional practice and not for a legitimate medical purpose, in violation of Title 21, United States Code, Section 841(a)(1).

4

## Purpose of the Conspiracy

16.     It was a purpose and object of the conspiracy for Defendant, and others known and unknown to unlawfully enrich themselves by, among other things: (a) distributing, dispensing, and diverting controlled substances outside the usual course of professional practice and not for a legitimate medical purpose; (b) generating large profits from distributing, dispensing, and diverting those controlled substances; and (c) diverting the proceeds from distributing and dispensing those controlled substances for their personal use and benefit.

## Manner and Means of the Conspiracy

The manner and means by which the Defendant sought to accomplish the purpose and object of the conspiracy included, among other things:

17.     Pharmacist 1 obtained a Texas Pharmacy and Texas Pharmacist Licenses from the TSBP and a DEA Registration for **Golden USA Pharmacy**.

18.     Pharmacist 1 managed and oversaw operations at **Golden USA Pharmacy**, assisted by **CLARISSA MINERO** and Person 2.

19.     "Crew leaders," including Person 1 regularly and knowingly obtained illegitimate and fraudulent prescriptions for controlled substances that were not written or authorized by a physician. The prescriptions regularly listed fictitious patient names, addresses, diagnoses, and physician phone numbers.

20.     "Crew leaders," including Person 1 regularly delivered illegitimate and fraudulent prescriptions to **Golden USA Pharmacy**.

21. Pharmacist 1 and **CLARISSA MINERO** communicated with "crew leaders," including Person 1, about their orders.

22. Pharmacist 1 knowingly filled illegitimate and fraudulent prescriptions for Schedule II controlled substances from **Golden USA Pharmacy**, including oxycodone, and hydrocodone, among other controlled substances, in exchange for cash from "crew leaders," including Person 1. Pharmacist 1 often charged approximately $1,200 to fill just one oxycodone prescription, and over $500 to fill just one hydrocodone prescription, well over market value for legitimate prescriptions.

23. The prescriptions Pharmacist 1 filled at **Golden USA Pharmacy** were almost always for hydrocodone 10mg and oxycodone 30mg, the highest dosage strengths of hydrocodone and the highest short-acting dosage strength of oxycodone. Pharmacist 1 ordered these high-strength controlled substances from multiple drug distributors.

24. Thousands of prescriptions were forged, stolen, written, and filled by Defendants and their co-conspirators, known and unknown, outside the course of professional practice and not for a legitimate medical purpose.

25. **CLARISSA MINERO**, Pharmacist 1, and Person 1 took steps to conceal evidence of their illegal activity.

### Overt Acts

26. In furtherance of the conspiracy and to effect the objects of the conspiracy, the following overt acts, among others, were committed in the Southern District of Texas and elsewhere:

      a.      On or around October 17, 2018, in the Southern District of Texas, the Defendant, **CLARISSA MINERO**, at the direction of Pharmacist 1 and with the help of Person 1, altered and destroyed patient signature log books and other records and documents of **Golden USA Pharmacy**.

All in violation of Title 18, United States Code, Section 371.

## NOTICE OF CRIMINAL FORFEITURE
## (18 U.S.C. § 981 with 28 U.S.C. § 2461(c))

27.    The allegations contained in Count 1 of this Information are hereby realleged and incorporated by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

28.    Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States of America gives notice to Defendant

## CLARISSA MINERO

that upon conviction for an offense in violation of Title 18, United States Code, Section 371, the following is subject to forfeiture

      a.      all property constituting, or derived from, any proceeds obtained, directly or indirectly, as the result of such violation.

## Money Judgment and Substitute Assets

29. The United States will seek the imposition of a money judgment against the Defendant upon conviction.

30. Defendants are notified that in the event that one or more conditions listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the Defendants up to the amount of the money judgment against the Defendant.

RYAN K. PATRICK
UNITED STATES ATTORNEY

ALLAN MEDINA
ACTING CHIEF, HEALTH CARE FRAUD UNIT
FRAUD SECTION, CRIMINAL DIVISION
U.S. DEPARTMENT OF JUSTICE

DEVON HELFMEYER
Trial Attorney
Fraud Section, Criminal Division
U.S. Department of Justice
Devon.Helfmeyer@usdoj.gov
(713) 567-9513